[Cite as *State v. Martin*, 2013-Ohio-87.]

| STATE OF OHIO | ) | IN THE COURT OF APPEALS |
|---|---|---|
| | )ss: | NINTH JUDICIAL DISTRICT |
| COUNTY OF SUMMIT | ) | |

| | |
|---|---|
| STATE OF OHIO | C.A. No. 26221 |
| Appellee | |
| v. | APPEAL FROM JUDGMENT ENTERED IN THE |
| EARL WAYNE MARTIN | COURT OF COMMON PLEAS COUNTY OF SUMMIT, OHIO |
| Appellant | CASE No. CR 11 02 0469 |

DECISION AND JOURNAL ENTRY

Dated: January 16, 2013

BELFANCE, Judge.

**{¶1}** Earl Martin appeals his convictions from the Summit Court of Common Pleas. For the reasons set forth below, we affirm.

I.

**{¶2}** Mr. Martin was indicted on four counts of rape and seven counts of gross sexual imposition. A jury found Mr. Martin guilty of all counts, and the trial court sentenced him to life imprisonment. Mr. Martin has appealed, raising a single assignment of error for our review.

II.

ASSIGNMENT OF ERROR

THE TRIAL COURT COMMITTED REVERSIBLE ERROR WHEN IT DENIED DEFENDANT-APPELLANT MARTIN'S MOTION FOR JUDGMENT OF ACQUITTAL UNDER CRIMINAL RULE 29.

**{¶3}** Mr. Martin argues that the trial court erred when it denied his Crim.R. 29 motions for acquittal because his convictions were supported by insufficient evidence and were against the manifest weight of the evidence. We disagree.

**Crim.R. 29**

{¶4} We review a denial of a defendant's Crim.R. 29 motion for acquittal by assessing the sufficiency of the State's evidence. *State v. Slevin*, 9th Dist. No. 25956, 2012-Ohio-2043, ¶ 15. "Whether a conviction is supported by sufficient evidence is a question of law that this Court reviews de novo." *State v. Williams*, 9th Dist. No. 24731, 2009–Ohio–6955, ¶ 18, citing *State v. Thompkins*, 78 Ohio St.3d 380, 386 (1997).

> An appellate court's function when reviewing the sufficiency of the evidence to support a criminal conviction is to examine the evidence admitted at trial to determine whether such evidence, if believed, would convince the average mind of the defendant's guilt beyond a reasonable doubt. The relevant inquiry is whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt.

*State v. Jenks*, 61 Ohio St.3d 259 (1991), paragraph two of the syllabus.

**K.M.D.**

{¶5} Mr. Martin was convicted of violating R.C. 2907.02(A)(1)(b) and R.C. 2907.05(A)(4) by committing rape and gross sexual imposition against K.M.D. between February 23, 1994, and June 30, 1996. He was also convicted of violating R.C. 2907.02(A)(1)(b) and R.C. 2907.05(A)(4) between July 1, 1996, and February 22, 2002.

{¶6} R.C. 2907.02(A)(1)(b) provides: "No person shall engage in sexual conduct with another who is not the spouse of the offender * * * when * * * [t]he other person is less than thirteen years of age, whether or not the offender knows the age of the other person." Sexual conduct is defined as

> vaginal intercourse between a male and female; anal intercourse, fellatio, and cunnilingus between persons regardless of sex; and, without privilege to do so, the insertion, however slight, of any part of the body or any instrument, apparatus, or other object into the vaginal or anal opening of another. Penetration, however slight, is sufficient to complete vaginal or anal intercourse.

R.C. 2907.01(A).

{¶7} R.C. 2907.05(A)(4), in pertinent part, provides: "No person shall have sexual contact with another, not the spouse of the offender [or] cause another, not the spouse of the offender, to have sexual contact with the offender * * * when * * * [t]he other person * * * is less than thirteen years of age, whether or not the offender knows the age of that person." "'Sexual contact' means any touching of an erogenous zone of another, including without limitation the thigh, genitals, buttock, pubic region, or, if the person is a female, a breast, for the purpose of sexually arousing or gratifying either person." R.C. 2907.01(B).

{¶8} K.M.D. testified that, growing up, her biological father was rarely around; instead, Mr. Martin acted like her father and she called him dad, often going to his house on the weekends. K.M.D. also testified about what she described as "[t]he tickle game" that Mr. Martin would engage in with "all the girls." According to K.M.D., "[i]t started as harmless. He would start in the stomach area outside of the clothes and then slowly work his way under the shirt or up the skirt or up the shorts and then around the chest area. And then the tickling would get slower and turn more into caressing and massaging[.]"

{¶9} According to K.M.D., who was born in 1991, Mr. Martin sexually molested her from the time she was 3 until she was 11. She testified that, the first time it happened, was when her mother, who was Mr. Martin's ex-wife, had Mr. Martin babysit her when she was three. While Mr. Martin and K.M.D. watched television, he slid his hands up her shorts and massaged her vagina with his fingers. K.M.D. testified that, on this occasion, Mr. Martin digitally penetrated her and also engaged in vaginal intercourse with her.

{¶10} K.M.D. further testified that, one weekend she was at Mr. Martin's house when she was five, he lay her on his bed, took off her underwear and massaged her vagina. He then

performed cunnilingus on her before climbing on top of her to have sex with her. She testified that she tried to call for help, but he "put all of his weight on top of [her] and cover[ed] [her] mouth with his hands."

{¶11} Another time, K.M.D. asked Mr. Martin for 50 cents to buy candy with, and he told her that he would give her the money if she touched his penis. K.M.D. did, and Mr. Martin proceeded to have sex with her. She was about seven-years-old at the time. According to K.M.D., this type of thing happened "[h]undreds" of times.

{¶12} K.M.D. also described a time that Mr. Martin engaged in sexual intercourse with her in the bed of his pickup truck while they were at the drive-in. According to K.M.D., Mr. Martin had taken her, her half-brother, and her half-sister, B.M., to see Halloween H20. While the movie was playing, Mr. Martin began rubbing K.M.D.'s vagina and then took K.M.D. from the front seat of the truck. He laid her down on a coat in the truck bed and proceeded to have sex with her while her half-brother and half-sister continued watching the movie. Detective Scott Rubes, who investigated Mr. Martin, testified that, during the course of his investigation, he learned that Halloween H20 had been released in 1998.

{¶13} K.M.D. testified that Mr. Martin engaged in sexual intercourse with her when she was three, five, and seven. She also testified that he engaged in sexual intercourse with her at a drive-in when they were watching Halloween H20, which came out in 1998. Thus, viewing the evidence in the light most favorable to the State, there was sufficient evidence from which a reasonable juror could conclude that Mr. Martin engaged in sexual conduct with K.M.D. between February 23, 1994, and June 30, 1996, as well as between July 1, 1996, and February 22, 2002. Furthermore, because K.M.D. was born in 1991, she would have been less than 13

when these incidents occurred. Accordingly, Mr. Martin's convictions for raping K.M.D. are supported by sufficient evidence.

{¶14} K.M.D. testified that Mr. Martin rubbed her vagina when she was three and during Halloween H20. She also testified that Mr. Martin had made her touch his penis when she was seven. Thus, viewing the evidence in a light most favorable to the State, there was sufficient evidence for the jury to find that Mr. Martin had committed gross sexual imposition against K.M.D. when she was less than 13-years-old between February 23, 1991, and June 30, 1996, and between July 1, 1996, and February 22, 2002.

**B.M.**

{¶15} B.M., Mr. Martin's biological daughter and K.M.D's half-sister, testified that she was born in 1986. According to B.M., starting at age three, Mr. Martin would touch her vagina when she stayed at his house as a child. She would often pretend to be asleep when he touched her but testified that, on one occasion, she said something because it hurt. Mr. Martin responded, "'Hold on, I'm almost done.'" B.M. was approximately six-years-old at the time. B.M. further testified that similar acts occurred every weekend she stayed with Mr. Martin from the time she was 3-years-old until she was 10. According to B.M., Mr. Martin would rub his penis on her vagina, massage her vagina with his fingers, and would also insert his fingers in her vagina. B.M. also testified that Mr. Martin would make her bathe him and that, when she bathed him, he made her touch his penis.

{¶16} Viewing the evidence in the light most favorable to the State, there was sufficient evidence from which the jury could find that Mr. Martin had violated R.C. 2907.02(A)(1)(b) and R.C. 2907.02(A)(4) both before and after July 1, 1996, when B.M. was less than 13 years of age.

**Gross Sexual Imposition- A.W., B.D., S.L., and S.B.**

**{¶17}** Mr. Martin was convicted of violating R.C. 2907.05(A)(4) by committing gross sexual imposition against A.W., B.D., S.L., and S.B. R.C. 2907.05(A)(4) provides: "No person shall have sexual contact with another, not the spouse of the offender * * * when * * * [t]he other person* * * is less than thirteen years of age, whether or not the offender knows the age of that person." "'Sexual contact' means any touching of an erogenous zone of another, including without limitation the thigh, genitals, buttock, pubic region, or, if the person is a female, a breast, for the purpose of sexually arousing or gratifying either person." R.C. 2907.01(B).

**{¶18}** Mr. Martin argues that the State set forth insufficient evidence to convict him because it failed to present evidence that he touched the children with the purpose of sexual gratification or arousal. However, a defendant's purpose may be inferred from the type, nature, and circumstances of the contact along with the personality of the defendant. *In re L.F.*, 9th Dist. No. 10CA09880, 2012-Ohio-302, ¶ 10.

**A.W.**

**{¶19}** A.W., who was seven-years-old at trial, testified that she was friends with Mr. Martin's younger daughters and that she would often go to his house to play or to spend the night. She testified that Mr. Martin would tickle her and that, at night he would rub her between her legs. According to A.W., this happened every time she spent the night.

**{¶20}** Colleen Shrout testified that she is a CARE nurse at Akron Children's Hospital and that she interviewed A.W. about her allegations against Mr. Martin. A video recording of Ms. Shrout's interview with A.W. was submitted into evidence. During the interview, A.W. told Ms. Shrout that Mr. Martin would lay in bed with her and pull her underwear down to her knees and touch her vaginal area, making circular motions with his fingers.

{¶21} Viewing the evidence in a light most favorable to the State, a jury could reasonably find that Mr. Martin touched A.W.'s vaginal area for the purpose of sexual gratification or arousal. Thus, the trial court did not err in denying his Crim.R. 29 motion on this count.

**B.D.**

{¶22} Mr. Martin was convicted of violating R.C. 2907.02(A)(1)(b) and R.C. 2907.05(A)(4) by raping and committing gross sexual imposition against B.M. between March 19, 1989, and June 30, 1996. Mr. Martin was also convicted of rape and gross sexual imposition against B.M. between July 1, 1996, and March 18, 1999.

{¶23} B.D. testified that she was a childhood friend of K.M.D. and that she stayed overnight at Mr. Martin's home on occasion. She testified that, when she spent the night at Mr. Martin's house, Mr. Martin had her and K.M.D. sleep in his bed with him. According to B.D., when she was about eight-years-old, she awoke one morning to find Mr. Martin rubbing her "[a]bove [her] vagina just back and forth right underneath the underwear." Viewing this evidence in the light most favorable to the State, the jury could reasonably determine that Mr. Martin touched B.D. for the purpose of sexual gratification or arousal. Accordingly, the trial court did not err in denying his Crim.R. 29 motion on this count.

**S.B.**

{¶24} Christine Brown testified that her daughter, S.B., was friends with one of Mr. Martin's younger daughters. When she learned that Mr. Martin was under investigation for sexually abusing children, she stopped allowing S.B. from visiting the Martins. Mr. Martin e-mailed S.B., and Ms. Brown asked S.B. to keep the e-mail. However, S.B. deleted it. Approximately 30 days after the e-mail, S.B. received a text message from the number

associated with Mr. Martin's daughter. Ms. Brown, seeing that the message was signed "Earl[,]" called the number back on S.B.'s phone, and Mr. Martin answered. According to Ms. Brown, Mr. Martin sounded excited to hear from her daughter before he realized that it was actually her on the phone.

{¶25} S.B. testified that, when she went to Mr. Martin's house, he would often tickle her and the other girls. According to S.B., Mr. Martin would often tickle her, laying her flat on her back on the couch. She recounted one time when she was wearing a skort, which she described as a skirt with shorts underneath it, and Mr. Martin placed her on the couch, slid his hands under the skirt portion, and tickled the inside of her thighs. S.B. was 9 or 10 when this occurred and testified that she always felt that the tickling was strange behavior.

{¶26} Viewing the evidence in the light most favorable to the State, a reasonable jury could find that Mr. Martin touched S.B. with the purpose for sexual gratification or arousal, and, thus, the trial court did not err in denying his Crim.R. 29 motion on this count.

**S.L.**

{¶27} S.L. testified that she knew Mr. Martin because her mother had married his son. She and her sisters often went to Mr. Martin's home to swim. According to S.L., one day when she was at Mr. Martin's house, the top of her bathing suit came untied. She asked Mr. Martin to tie it for her. Instead of tying the suit, Mr. Martin, who was seated behind S.L. at the time, reached around her and touched her breasts over her swimsuit. S.L. testified that she was less than 13-years-old when this occurred. S.L. also testified that, another time she was at Mr. Martin's house, he walked in on her while she was taking a shower.

{¶28} Viewing the evidence in the light most favorable to the State, a reasonable jury could find that Mr. Martin committed gross sexual imposition against S.L., and, therefore, the trial court did not err in denying his Crim.R. 29 motion on this count.

**Manifest Weight**

{¶29} Mr. Martin also argues that his convictions are against the manifest weight of the evidence. In reviewing a challenge to the weight of the evidence, the appellate court

> [m]ust review the entire record, weigh the evidence and all reasonable inferences, consider the credibility of witnesses and determine whether, in resolving conflicts in the evidence, the trier of fact clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered.

*State v. Otten*, 33 Ohio App.3d 339, 340 (1986).

**Gross Sexual Imposition- A.W., B.D., S.L., and S.B.**

{¶30} Mr. Martin argues that his convictions for gross sexual imposition against A.W., B.D., S.L., and S.B. are against the manifest weight of the evidence because he testified that he never committed the acts and because his mother, Frances Martin, testified that she had never observed Mr. Martin behaving inappropriately with the girls. We initially note, however, that nothing in the record calls the credibility of A.W., B.D., S.L. or S.B. into question. By contrast, the jury could have found that Ms. Martin's relationship with Mr. Martin would suggest bias and, thus, affect her credibility as a witness. Furthermore, while Ms. Martin testified that she was often at Mr. Martin's home and never observed any inappropriate behavior, she did not testify that she spent the night, which was when A.W. and B.D. testified that Mr. Martin touched them. Nor did Ms. Martin testify that she observed the swimsuit incident S.L. described, meaning that she could not refute any of S.L.'s testimony with firsthand knowledge.

{¶31} The question of credibility is ultimately a question for the trier of fact, and, after a thorough review of the record, we cannot say that the jury lost its way when it found Mr. Martin to have violated R.C. 2907.05(A)(4) by having sexual contact with A.W., B.D., S.L., and S.B.

### K.M.D. and B.M.

{¶32} With regard to Mr. Martin's convictions for rape and gross sexual imposition against K.M.D. and B.M., he argues that the convictions are against the manifest weight of the evidence because "the only evidence presented to the jury was the inconsistent testimony of the two alleged victims." He points to the lack of physical evidence presented to support the testimony of K.M.D. and B.M., the inconsistencies in their testimony, and the character witnesses he called who testified that B.M. did not have a good reputation for truthfulness in the community.

{¶33} However, it is important to note that each of the character witnesses called by Mr. Martin had a significant relationship with him. Brian Price testified that he had been friends with Mr. Martin for 34 years. Crystal Travis testified that Mr. Martin was her uncle and that he walked her down the aisle at her wedding, and Ms. Martin is Mr. Martin's mother. Thus, the jury could have determined that their relationships with Mr. Martin suggested bias and, therefore, affected their credibility as witnesses. Furthermore, all of the witnesses admitted that they had little to no contact with B.M. for approximately four years.

{¶34} Mr. Martin is correct that no physical evidence was submitted in support the testimony of K.M.D. and B.M. However, although the lack of physical evidence is a factor for the jury to weigh, K.M.D. and B.M. both initially reported the abuse more than five years after the last incident. Under these circumstances, one would not expect physical evidence to have been preserved. Mr. Martin also points to the delay in reporting the abuse as undermining their

credibility. However, the jury also heard Ms. Shrout testify that it was common for children to not immediately report abuse. Detective Rubes also testified that it was common to receive a delayed report of sexual abuse against a child.

{¶35} Mr. Martin also argues that B.M. and K.D.M. were inconsistent in their testimony, "express[ing] confusion regarding time, date, and how often the assaults and abuses occurred." However, he has not actually cited what portions of B.M. and K.D.M.'s testimony he believes were inconsistent. *See* App.R. 16(A)(7). Regardless, after a thorough review of the record, we cannot say that the jury lost its way and created a manifest miscarriage of justice when it found Mr. Martin guilty of rape and gross sexual imposition towards B.M. and K.D.M.

{¶36} Accordingly, Mr. Martin's assignment of error is overruled.

III.

{¶37} Mr. Martin's assignment of error is overruled. The judgment of the Summit County Court of Common Pleas is affirmed.

Judgment affirmed.

———

There were reasonable grounds for this appeal.

We order that a special mandate issue out of this Court, directing the Court of Common Pleas, County of Summit, State of Ohio, to carry this judgment into execution. A certified copy of this journal entry shall constitute the mandate, pursuant to App.R. 27.

Immediately upon the filing hereof, this document shall constitute the journal entry of judgment, and it shall be file stamped by the Clerk of the Court of Appeals at which time the period for review shall begin to run. App.R. 22(C). The Clerk of the Court of Appeals is

instructed to mail a notice of entry of this judgment to the parties and to make a notation of the mailing in the docket, pursuant to App.R. 30.

Costs taxed to Appellant.

_____
EVE V. BELFANCE
FOR THE COURT

MOORE, P. J.
CARR, J.
CONCUR.

APPEARANCES:

NOAH C. MUNYER, Attorney at Law, for Appellant.

SHERRI BEVAN WALSH, Prosecuting Attorney, and RICHARD S. KASAY, Assistant Prosecuting Attorney, for Appellee.